JUDGE JOHN H. CHUN

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff | NO. CR 22-69 JHC |
| vs. | |
| DWIGHT HENLINE | DEFENDANT'S TRIAL BRIEF AND |
| Defendant. | MOTIONS IN LIMINE |

Defendant Dwight Henline, through counsel David Hammerstad and Joshua Saunders, respectfully offers the following Trial Brief and Motions in Limine.

## I.    Introduction

Mr. Henline is accused of setting a fire which burned down three commercial buildings in downtown Friday Harbor.  There were no injuries from the fire, which was discovered during the early morning hours of April 7, 2022.  The government will allege that Mr. Henline set the fire around 10 PM on the 6th and then boarded the ferry bound for Whidbey Island. Little evidence of a fire existed, however, until nearly 4:00 AM the next day, when a fire began that consumed the buildings at issue.

Defendant's Trial Brief and Motions in Limine
(*U.S. v. Henline*; 22-69 JHC)

The Law Office of David Hammerstad, LLC
1000 2ⁿᵈ Ave., Suite 3140
Seattle, WA 98104
Tel. 206.445.0215
e-mail: david@hammerstadlaw.com

The government will present no evidence establishing a motive on Mr. Henline's part to burn down those particular buildings or to hurt the owners or occupants of those buildings. Instead, they will present evidence intended to establish that Mr. Henline harbored anger towards certain other individuals in Friday Harbor, or that he was behaving in a violent and/or erratic fashion. This evidence will consist of testimony from witnesses regarding various incidents that occurred on or before April 6th.

The government will argue that this testimony is admissible under Federal Rule of Evidence 404(b) as motive, intent, or lack of accident/mistake. Two of these theories are inapplicable because no evidence suggests that Mr. Henline unintentionally or inadvertently set the fire, or that he intended to set fire to buildings other than the ones that were eventually damaged. Admitting prior bad acts or statements under those bases would be error and would serve only to impermissibly lead the jury to infer guilt based on the portrayed "disposition or character" of Mr. Henline. *See United States v. Berckmann*, 971 F.3d 399, 1004 (9th Cir. 2020), quoting *United States v. San Martin*, 505 F.2d 918, 923 (5th Cir. 1974).  Mr. Henline submits that much of the remaining evidence is inadmissible because it is not relevant and is more prejudicial than probative.

The government will attempt to connect Mr. Henline's statements and behaviors toward these individuals with a motive to set the fire.  In fact, these incidents are not relevant to a motive to set the fire and present grave risk that Mr. Henline will be prejudiced and unfairly convicted because of character evidence masquerading as motive evidence. As the Supreme Court noted in 2017, "[o]ur law punishes people for what they do, not who they are." *Buck v. Davis*, 580 U.S. 100, 123, 137 S. Ct. 759, 778 (2017).

## II.     The Admissibility of Evidence

In the Ninth Circuit, the four-part test articulated in *United States v. Romero* is used to determine admissibility of evidence pursuant to Rule 404(b):

**Defendant's Trial Brief and Motions in Limine**
(*U.S. v. Henline*; 22-69 JHC)

**The Law Office of David Hammerstad, LLC**
**1000 2nd Ave., Suite 3140**
**Seattle, WA 98104**
**Tel. 206.445.0215**
**e-mail: david@hammerstadlaw.com**

> We have articulated a four-part test to determine the admissibility of evidence pursuant to Rule 404(b). Such evidence "may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." [citations omitted] "If the evidence meets this test under Rule 404(b), the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403."

*United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002), citing *United States v. Chea*, 231 F.3d 531, 534 (9th Cir. 2000).

Many of the specific other acts discussed below for which the government seeks admission under ER 404(b) consist of statements of anger or frustration by Mr. Henline, or of instances where he encountered difficulties, i.e. losing a job or housing. But these lack a sufficient nexus to the charged arson to be admissible – they do not prove any point material to the crimes charged, many are incredibly remote in time, there is often no evidence (other than inadmissible hearsay) that Mr. Henline even committed the other acts and none of the acts are similar to the offense charged.

Evidence of quarrels, frustration and anger involving other people in other situations is not admissible as a means of proving motive or intent where not relevant or where relevance is outweighed by prejudice.  This type of character evidence must be "of consequence":

> Relevant evidence of a prior act is not admissible to prove a person's character in order to show that on a particular occasion she acted in accordance with the character. Fed. R. Evid. 404(b)(1). Such evidence may be admissible, however, to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Evidence is relevant if it tends to make a fact more or less probable and the fact is of consequence in determining the action. Fed. R. Evid. 401.

*United States v. Free*, 976 F.3d 810, 813 (8th Cir. 2020).

**The Law Office of David Hammerstad, LLC**
**1000 2nd Ave., Suite 3140**
**Seattle, WA 98104**
**Tel. 206.445.0215**
**e-mail: david@hammerstadlaw.com**

Defendant's Trial Brief and Motions in Limine
(*U.S. v. Henline*; 22-69 JHC)

In other cases where the government has attempted to show that prior acts of anger, violence or threat demonstrate motive or intent, courts have found that such evidence is inadmissible where the acts were against different people in different circumstances. In *United States v. Charley*, 1 F.4th 637 (9th Cir. 2021), the court held that where a defendant charged with assault argued self-defense, the government could not introduce prior incidents in which defendant had committed minor assaults against other persons given the lack of logical connection – the only real relevance was to show a propensity for violence:

> Here, the Government argues that Charley made her motive and intent to assault Begay central issues by claiming self-defense. Specifically, the Government contends that Charley's prior incidents—(1) kicking her stepmother's door and yelling profanities and (2) hitting her sister on the head with a coffee mug—show "who the initial aggressor was in Begay's assault." But there is no logical connection between those prior incidents and the charged assault other than the implication that Charley has a propensity for violence and was therefore the aggressor on the occasion here—an impermissible inference under Rule 404(b) and an improper consideration when determining whether self-defense was established.

> First, the prior incidents do not establish Charley's motive to commit the charged assault against Begay. "[P]rior bad act evidence is allowed to show motive only when motive is in turn relevant to establish an element of the offense that is a material issue." [citation omitted] But "[t]he prior wrongful acts must establish a motive to commit the crime charged, not simply a propensity to engage in [violence]." [citation omitted] Here, no evidence whatsoever links Charley's motive to assault Begay to her prior incidents that involved her stepmother and sister, but not Begay himself.

*Charley*, 1 F.4th at 648, citing *United States v. Brown*, 880 F.2d 1012, 1014-15 (9th Cir. 1989) and *United States v. Bowman*, 720 F.2d 1103, 1105 (9th Cir. 1983). As noted in *Charley*, when considering admission of prior offenses under ER 404(b), "the greater is the dissimilarity of the

**Defendant's Trial Brief and Motions in Limine**
(***U.S. v. Henline***; 22-69 JHC)

**The Law Office of David Hammerstad, LLC**
**1000 2ⁿᵈ Ave., Suite 3140**
**Seattle, WA 98104**
**Tel. 206.445.0215**
**e-mail: david@hammerstadlaw.com**

two offenses, the more tenuous is the relevance". *Charley,* 1 F.4th at 650, citing *United States v. Hernandez-Miranda*, 601 F.2d 1104, 1109 (9th Cir. 1979) See also *United States v. Bettencourt*, 614 F.2d 214 (9th Cir. 1980) and *United States v. Berckmann*, 971 F.3d 999 (9th Cir. 2020).

The Charley court went on to clarify that the admission of unrelated prior bad acts amounted to impermissible propensity evidence:

> Evidence of the prior incidents "does not tell the jury anything about what the defendant intended to do in [her] later action—unless, of course, one argues (impermissibly) that the prior act establishes that the defendant has criminal propensities."

*Charley*, 1 F.4th at 650, citing *United States v. Miller*, 874 F.2d 1255, 1269 (9th Cir. 1989).

In *United States v. Lentz*, the district court confronted an issue similar to this one. The defendant had allegedly made threats to the friends and acquaintances of a murder victim. The court found these acts insufficiently related to the charged crime and overly prejudicial:

> Here, the acts are not even directed at Ms. Lentz. Further, these acts, although rude and possibly obnoxious, have nothing to do with tricking Ms. Lentz to cross state lines with the intent to kill her. Second, the evidence is unnecessary in the sense that it is not probative of any essential claim or element of the crime in this case. Defendant's animosity toward staff members at the day care center, and isolated remarks to his pastor and Mr. Henchen, do not go to any essential issue, much less an element of the charged offense of kidnapping.
>
> Finally, even if the evidence were somewhat probative of Defendant's animosity towards Ms. Lentz, it is substantially outweighed by the risk of unfair prejudice to the Defendant. The jury's judgment would surely be clouded by evidence that the Defendant hurled insults in front of children at the day care center, yelled at a pastor, and threatened a witness in the Lentz's divorce proceedings. In sum, this evidence raises the specter of being submitted for the sole purpose of demonstrating Defendant's bad character and propensity to conform therewith. Such evidence is therefore inadmissible under Rules 404(b) and 402, as well as 402.

*United States v. Lentz*, 282 F. Supp. 2d 399, 436 (E.D.Va. 2002).

Defendant's Trial Brief and Motions in Limine
(*U.S. v. Henline*; 22-69 JHC)

The Law Office of David Hammerstad, LLC
1000 2nd Ave., Suite 3140
Seattle, WA 98104
Tel. 206.445.0215
e-mail: david@hammerstadlaw.com

Here, the acts and statements the government seeks to elicit are even less related than those in *Lentz* because no evidence suggests any threat or animosity by Henline towards the damaged businesses or their owners.

Not every stray comment, bad act, vaguely threatening remark or setback in Mr. Henline's life can be smuggled into court simply by invoking "motive and intent." That would effectively allow the government to mine Mr. Henline's entire history for any example of an outburst of frustration that implies a bad act, whether connected to this arson in any way or not. The Court should heed the warning of the court in *United States v. Goodwin*, where it noted:

> We have recognized, however, and we must continue to recognize, that the various categories of exceptions — intent, design or plan, identity, etc. — are not magic passwords whose mere incantation will open wide the courtroom doors to whatever evidence may be offered in their names. To the contrary, each exception has been carefully carved out of the general rule to serve a limited judicial and prosecutorial purpose.

*United States v. Goodwin*, 492 F.2d 1141 (5th Cir. 1974).

Because the proposed evidence fails to meet an exception, pass the test articulated in *Romero*, or for other reasons articulated below, the defense makes the motions in limine contained herein.


### III. Motions in Limine

### A. Motion to Exclude Testimony of Mr. Henline's Ex-Girlfriends

Mr. Henline believes that the government will call two witnesses with whom he has had a romantic relationship—Sophie Marinkovich and Aurora Covington.  They intend to admit statements allegedly made by Mr. Henline to each as evidence of motive, intent, and lack of accident/mistake. In each instance, Mr. Henline argues that the statements do not pass the *Romero* test and should be inadmissible under ER 403 as more prejudicial than probative. The statements, he argues, are inadmissible character or propensity evidence.

*6*

**Defendant's Trial Brief and Motions in Limine**
(*U.S. v. Henline*; 22-69 JHC)

**The Law Office of David Hammerstad, LLC**
**1000 2nd Ave., Suite 3140**
**Seattle, WA 98104**
**Tel. 206.445.0215**
**e-mail: david@hammerstadlaw.com**

**1. Sophie Marinkovich**

    a.  **Communications prior to April 6, 2022**

Discovery provided by the government contains Facebook messages from Mr. Henline to his then ex-girlfriend, Sophie Marinkovich, from April 2 to April 5, 2022, in which Mr. Henline expresses that he loves and misses Ms. Marinkovich.  Ms. Marinkovich responds primarily by asking him not to text her anymore.  Mr. Henline's romantic history with Ms. Marinkovich is not relevant to any issue in dispute and it should be excluded under ER 403 for lack of relevance, waste of time, and confusion of the issues.

The government will also seek to admit Mr. Henline's text statement that he is "done with you people," referring to Ms. Marinkovich and her friend (also Mr. Henline's ex-roommate) Erik King. This text should not be admitted as evidence. It comes at the conclusion of a lengthy text in which Mr. Henline writes, among other things, that he is upset because Ms. Marinkovich and Erik King treat him "like [he] is stupid" and "talk down to [him]." He then discusses how best to return her furniture to her, suggesting that he put it on the front porch. Before saying that he is "done with" her and Mr. King, he writes that she and King are "perfect for each other" and to tell King "thanks for everything."

These statements evidence no animus towards the people of Friday Harbor generally or any of the businesses damaged by the fire. It hardly evidences substantial animus towards King and Marinkovich, if taken in context. Taken out of context, however, it would be prejudicial. The communications are too attenuated to be relevant to this prosecution.

Any similar statements that Ms. Marinkovich might make regarding alleged "bad act" or angry statements by Mr. Henline should be excluded unless they specifically pertain to a intent to commit arson against the charged properties in this case. Alleged statements expressing frustration at the town of Friday Harbor or inhabitants other than the owners of the affected properties would not pass the *Romero* test, as they would be too attenuated to prove a material point with respect to the offenses charged.

Defendant's Trial Brief and Motions in Limine
(*U.S. v. Henline*; 22-69 JHC)

The Law Office of David Hammerstad, LLC
1000 2nd Ave., Suite 3140
Seattle, WA 98104
Tel. 206.445.0215
e-mail: david@hammerstadlaw.com

**b. Evidence regarding Ms. Marinkovich's flat tire**

According to discovery provided by the government, Ms. Marinkovich told investigators that she went to play pool at Herb's Tavern, which was two buildings to the west of where the fire was allegedly started, on the evening of April 6, 2022.  She reported that she arrived sometime between 8:30 p.m. and 9:00 p.m. and parked her car on the opposite side of Spring Street from Herb's Tavern. She claims that when she left around 10 p.m.  she found that her tire was flat.[1] At the time, she did not suspect Mr. Henline, or anyone else, of slashing her tire. When agents interviewed her on April 29, 2022, she showed them the tire which appeared to have a hole consistent with a knife puncture.

Under ER 404(b), evidence of other wrongs must prove a material point (other than to prove the defendant acted in conformity with a character trait) and be supported by sufficient evidence. *United States v. Garcia-Orozco*, 997 F.2d 1302, 1304 (9th Cir. 1993).  The evidence relating to the flat tire appears to be offered to paint Mr. Henline as a destructive person who acted in conformity with that destructive character.

More significantly, there is no evidence that Mr. Henline was responsible for Ms. Marinkovich's flat tire.  The only evidence the government will be able to advance connecting Mr. Henline to the tire puncture is Mr. Wyant's testimony that a single-edged tool created the 1.25-inch defect in the tire, and that Mr. Henline was known to possess knives, which are single-edged tools.  Mr. Wyant's examination focused on now-excluded toolmark comparison evidence. It does not appear that he documented the width of any of the four knives mentioned in his report, which all appear to be of varying widths from tip to base.  With each, he prepared a cast of a 1.5" stab in vinyl tubing, see Dkt. 55-1 at 4, which suggests that all of the knives tested were at least 1.5" wide at some point.  Given the very large number of knives capable of making a 1.25-inch defect—which would include smaller knives that were moved back and forth and larger knives that were not fully inserted—testimony from Mr. Wyant that any of the knives he

---

[1]  Another government witness, Tanner Miller, told investigators he was playing pool with Ms. Marinkovich and that when he left at 11 p.m she was still there (see Bates 333).

**Defendant's Trial Brief and Motions in Limine**
(*U.S. v. Henline*; 22-69 JHC)

The Law Office of David Hammerstad, LLC
1000 2nd Ave., Suite 3140
Seattle, WA 98104
Tel. 206.445.0215
e-mail: david@hammerstadlaw.com

tested "can't be excluded" as the suspect knife would be too lacking in probative value to meet the evidentiary barrier to offer this evidence.  See *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (to be admissible under 404(b) there must be "sufficient evidence from which the jury could reasonably conclude that [defendant] actually committed the allegedly-similar bad act.")

Moreover, the knives examined by Mr. Wyant were seized from a coffee can at Mr. Henline's grandfather's house on April 15, 2022.  The defense is unaware of any foundational testimony by any witness that would establish that Mr. Henline was carrying any particular knife, including any of those four knives, on April 6, 2022.

### 2.  Aurora Covington

#### a.  Regarding alleged prior statement that Henline would "burn down the town"

Ms. Covington alleges that sometime in the first year of their relationship Mr. Henline "threatened to burn the town down" in response to losing a job and/or getting arrested.  Per discovery, this arrest, which the government has agreed not to mention, happened in November 2018 (Bates 3778). However, Ms. Covington also notes that she moved to Friday Harbor after breaking up with Mr. Henline, suggesting that this alleged comment may have occurred on Whidbey Island or another location. (Bates 352)

This testimony should be excluded by the court under ER 403 as unfairly prejudicial, confusing the issues, and misleading the jury. The alleged threat is highly prejudicial, since it would lead the jury to assume that it was, in fact, a threat to commit the very crime that Mr. Henline is accused of. But its probative value is slim—it is alleged to have been said some five years prior to the events of this case and perhaps in a different location. Moreover, a threat to "burn the town down" is a not-uncommon colloquial expression of frustration that few would take seriously. In fact, according to a recent interview with Ms. Covington, she did not take it seriously at the time (Bates 20246).  It shows no evidence of a specific plan to commit an arson and certainly no evidence of any animosity towards the particular businesses or business owners that were affected by the fire.

Defendant's Trial Brief and Motions in Limine
(*U.S. v. Henline*; 22-69 JHC)

The Law Office of David Hammerstad, LLC
1000 2nd Ave., Suite 3140
Seattle, WA 98104
Tel. 206.445.0215
e-mail: david@hammerstadlaw.com

This testimony would not pass the test articulated in *Romero*. It does not name a specific victim or location and so is not "of consequence" to a material point. It alleges a statement made five years before the alleged crime. If the Court finds this evidence admissible, Mr. Henline requests that it conduct a brief hearing outside of the presence of the jury to determine if the statement bears the necessary indicia of reliability.

Mr. Henline asks that the Court treat any other statements of allegedly poor behavior or statements by Mr. Henline by excluding them according to this same analysis.

### b.  Regarding speculation that Mr. Henline was sleeping in the alley of 40 Spring Street

Ms. Covington reported to law enforcement that she "thought" that Henline "might have been" spending nights in an alley in the area of 40 Spring Street. She also said, according to discovery provided by the Government, that she did not have direct information about exactly where he had been staying or who specifically might have interacted with him.

This evidence should be excluded because it is presumably hearsay that does not fall under an exception, is vague and unsupported, and would be more prejudicial than probative under ER 403(b). A jury's decision should not be influenced by unsubstantiated rumors testified to by an ex-girlfriend of the defendant.

### c.  Regarding alleged threats made on March 27

Ms. Covington told law enforcement that she and a boyfriend, Jamie Briggs II, saw Mr. Henline on March 27th in Friday Harbor. She claims that Henline was drinking and that he yelled that they were "pieces of shit" and that they "deserve to die." She also alleges that he said that he would "come after [them] when they least expect it." (Bates at 20241) She further claims that Mr. Henline tapped some knives that he was wearing when making these comments. Mr. Briggs makes similar allegations.

**Defendant's Trial Brief and Motions in Limine**
(***U.S. v. Henline***; 22-69 JHC)

**The Law Office of David Hammerstad, LLC**
**1000 2nd Ave., Suite 3140**
**Seattle, WA 98104**
**Tel. 206.445.0215**
**e-mail: david@hammerstadlaw.com**

These are classic examples of "bad acts" that should be precluded under the Rules of Evidence. They are uncharged crimes: threats made to people (in this case, an ex-girlfriend and her new boyfriend) other than the victims in the charged offense. Threats and knife tapping that ostensibly happened over ten days before the fire have no correlation to the arson charges. Seeking to admit this evidence under a theory that it shows the hypothetically declining mental state of Mr. Henline is simply to attempt to admit propensity evidence. The jury might well impermissibly infer that a person who was so angry as to make threats to an ex-girlfriend and tap knives is precisely the type of person to intentionally set a fire. Following the standard elaborated above in *Charley*, the Court should preclude this evidence as too attenuated and far too prejudicial.

**B. Motion to Exclude Alleged Statements About a Propensity for Violence**

      **1. Tanner Miller**

Mr. Miller will testify that Mr. Henline got upset when discussing his ex-girlfriends. Mr. Henline would blame them for his problems and express a desire to hurt them, Mr. Miller claims. Mr. Miller could not recall the specifics of what Mr. Henline allegedly said or how he described "hurting" his ex-girlfriends, however. According to discovery, Mr. Miller may also testify that Mr. Henline once said in a "chanting tone" that it was "his job to destroy everything good in the world." Mr. Miller also said that Mr. Henline told him this was a lyric to a song that Mr. Henline had written. (Bates at 0332) However, Mr. Miller denied hearing this statement in a recent defense interview.

The former statements are uncharged threats that are specific to people who are not victims in this case. Mr. Miller was apparently not able to give any specific details about what was said about which ex-girlfriend or when. In the case of the alleged song lyric, the allegation offers no specific plan or target to "destroy," nor does it mention arson or fire. There is no suggestion that Mr. Henline considers the businesses that were affected by the fire to be "good"

**Defendant's Trial Brief and Motions in Limine**
(*U.S. v. Henline*; 22-69 JHC)

**The Law Office of David Hammerstad, LLC**
**1000 2nd Ave., Suite 3140**
**Seattle, WA 98104**
**Tel. 206.445.0215**
**e-mail: david@hammerstadlaw.com**

things that he needs to destroy. To accept this statement as evidence is akin to considering a performed poem or song as an expression of genuine sentiment.

Neither set of statements possesses the nexus required by the law or the indicia of reliability required by the *Romero* test. They tend to prove no material point to the charged offense and instead offer evidence suggesting that Dwight Henline has the propensity to engage in acts of domestic violence or wanton destruction. Mr. Miller's statements above and any similar should be excluded.

Should the court contemplate admitting any of these statements, given the vague nature of Mr. Miller's descriptions, the defense would request a brief hearing outside the presence of the jury.

### 2. Deputy Joshua Holt

Deputy Holt arrested Mr. Henline on July 8 of 2021 for charges that the government has agreed are not relevant to this case and will not be introduced into evidence. Deputy Holt alleges that during that arrest, Mr. Henline ground his teeth and cracked his knuckles while saying that "people don't know what I'm capable of." He has also reported on other interactions with Mr. Henline, alleging that Mr. Henline said that he might "snap" at any moment.  Deputy Holt should not be permitted to testify about these interactions.

The deputy's proffered testimony is precisely the type warned against by the *Charley* court. The attributed comments could not be less specific to this allegation. Mr. Henline's alleged comments are the equivalent of a suspect telling an officer that he should "watch out" or that the suspect is a "bad guy." Alternatively, they could mean that Mr. Henline believes himself "capable" of becoming an attorney and staying out of trouble. The point is precisely that the alleged comments are so ambiguous as to lack probative value for any material point. Instead, they paint a picture of Mr. Henline as a dangerous and unpredictable character, if taken in the wrong light. This is impermissible propensity evidence.

**Defendant's Trial Brief and Motions in Limine**
(*U.S. v. Henline*; 22-69 JHC)

**The Law Office of David Hammerstad, LLC**
**1000 2nd Ave., Suite 3140**
**Seattle, WA 98104**
**Tel. 206.445.0215**
**e-mail: david@hammerstadlaw.com**

**C. Motion to Exclude Irrelevant Testimony from Sadie Tappan**

In its 404(b) disclosure to the defense, the government initially included Ms. Tappan, along with Ms. Covington and Ms. Marinkovich, as former "romantic partners" of Mr. Henline who the government claims had all experienced negative behaviors relevant to the charged offense. The parties conducted a joint interview of Ms. Tappan on September 20, 2023, in which she clarified that she was not a romantic partner of Mr. Henline, that they had hung out one afternoon well before the time of the fire, and that though she had "blocked" him after he sent her unwanted texts, she did not have any particularly notable interactions with him near the time of the fire.

Ms. Tappan was first interviewed because she was the cashier at the time agents came to the "Little Store" to look for surveillance video of Mr. Henline purchasing lighter fluid. Ms. Tappan identified Mr. Henline and the cashier who helped Mr. Henline. The defense anticipates that the government will call Elijah Martinez, the clerk who helped Mr. Henline, rendering Ms. Tappan's testimony superfluous.

Nevertheless, at the meet and confer conference regarding 404(b) evidence, the government suggested it would still be calling Ms. Tappan to testify that (a) "no one" bought lighter fluid, and it was unusual that Mr. Henline did so, and (b) Mr. Henline appeared to be acting more purposefully when he came into the store to buy the lighter fluid, in contrast to other occasions when he would loiter and chit-chat. The first of these proffered testimonies is without foundation—clearly lighter fluid was on sale because customers bought it, and the government could easily obtain records substantiating how often it was bought, and the second, which the defense assumes comes from Ms. Tappan's review of the surveillance video, since it appears that Mr. Martinez, not she, was cashiering at the time, goes beyond mere demeanor description and is instead speculation as to Mr. Henline's state of mind.

Defendant's Trial Brief and Motions in Limine
(*U.S. v. Henline*; 22-69 JHC)

The Law Office of David Hammerstad, LLC
1000 2nd Ave., Suite 3140
Seattle, WA 98104
Tel. 206.445.0215
e-mail: david@hammerstadlaw.com

**D. Motion to Exclude Speculative Testimony About Dwight Henline's Mental Health or State of Mind**

The government intends to argue that Mr. Henline's mental health was deteriorating in the weeks before the fire. It will attempt to show that he lost his housing and employment, causing his behavior to change. As part of this effort, the defense believes that various witnesses will testify about Mr. Henline's behavior in the days preceding the fire. Although witnesses would likely be allowed to testify about actions they personally saw Mr. Henline take, as well as statements that he made, they should not be allowed to speculate about his mental health  or state of mind during that period.

Of particular concern is Bryan Germain, a government witness who was Dwight Henline's sponsor at Alcoholics Anonymous. According to the report of a statement given to Special Agent Greg Heller and AUSA Becker on October 4, 2023, Mr. Germain said that he was concerned that Mr. Henline could "lash out" when he met him on April 6th. He opined that Mr. Henline seemed "overly emotional" and "mad at everybody." He claimed that "Henline believed that people on the island were 'out to get him.'" Apparently, Mr. Germain's perception was that it "didn't seem that Henline was mad at a particular person, rather he was angry at the collective group of people in Friday Harbor" (Bates at 20603).

Mr. Germain also reported that although he had never witnessed Mr. Henline being violent towards himself or anyone else (he reports that he hugged Mr. Heline and gave him some money at the end of their interaction that day), he was concerned enough about his safety that he called his brother and told him to call his wife if he (Mr. Germain) didn't call back in fifteen minutes.

Subsequent to the disclosure of Mr. Germain's statement, counsel conducted a joint interview with Mr. Germain.  Mr. Germain offered that much of what he expressed to Agent Heller and AUSA Becker was his "opinion," and that his opinion that Mr. Henline was angry at "everybody" was based on Mr. Henline's statement that he was "done with Friday Harbor" or words to that effect.

**Defendant's Trial Brief and Motions in Limine**
(*U.S. v. Henline*; 22-69 JHC)

**The Law Office of David Hammerstad, LLC**
**1000 2nd Ave., Suite 3140**
**Seattle, WA 98104**
**Tel. 206.445.0215**
**e-mail: david@hammerstadlaw.com**

Under Rule 701, a lay opinion witness may testify to an opinion that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The Ninth Circuit has clarified that Rule 701(a) contains a personal knowledge requirement. *United States v. Lopez*, 762 F.3d 852, 864 (9th Cir. 2014). This means that "[a] lay opinion witness may testify based on firsthand knowledge or observation, but cannot testify based on speculation or hearsay, or interpret unambiguous statements." *United States v. Babichenko*, 543 F. Supp. 3d 930, 937-38 (D. Idaho 2021), citing *United States v. Lloyd*, 807 F.3d 1128, 1154 (9th Cir. 2014).

District courts have held that FRE 701 precludes testimony which calls for speculation regarding a defendant's state of mind. *United States v. Waller*, No. 2:18-CR-112 JCM (VCF), 2019 U.S. Dist. LEXIS 39182, at *6 (D. Nev. Mar. 12, 2019); *United States v. Ganesh*, No. 16-CR-00211-LHK, 2017 U.S. Dist. LEXIS 164918, at *3-4 (N.D. Cal. Oct. 3, 2017); see also *United States v. Dashner*, 2015 U.S. Dist. LEXIS 79255, 2015 WL 3660331, at *3 (N.D. Cal. June 2, 2015). In *Ganesh*, the district court further held,

> [B]ecause Fed. R. Evid. 701(c) precludes lay witnesses from giving testimony that is not based on scientific, technical or other specialized knowledge within the scope of Fed. R. Evid. 702, lay witnesses cannot give opinions on whether a defendant suffers from a mental disease or defect, which is the proper subject of expert testimony.

*Ganesh*, 2017 U.S. Dist. LEXIS 164918, at *1-3.

Under Federal Rule of Evidence 602, "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." In *United States v. Kupau*, the district court excluded testimony from a witness on Defendant's state of mind, based on Rule 602, where "no testimony had been introduced that [Defendant] had made statements to [witness] revealing his state of mind." *United States v. Kupau*, 781 F.2d 740, 745 (9th Cir. 1986).

**Defendant's Trial Brief and Motions in Limine**
(*U.S. v. Henline*; 22-69 JHC)

**The Law Office of David Hammerstad, LLC**
**1000 2ⁿᵈ Ave., Suite 3140**
**Seattle, WA 98104**
**Tel. 206.445.0215**
**e-mail: david@hammerstadlaw.com**

And in *United States v. Heine*, the court indicated it would follow the dictates of Rule 602 in addressing the exclusion of "improper lay opinion testimony or documents concerning [Defendant's] knowledge or state of mind," pointing to statements and FDIC Memoranda of Interviews which recited "a witness's speculation or opinions about what Heine thought, must have known, or believed."  *United States v. Heine*, No. 3:15-cr-238-SI, 2017 U.S. Dist. LEXIS 165367, at *26-27 (D. Or. Oct. 5, 2017). In *Heine*, the Court declined to address these issues pretrial and decided instead that the objections were better made during trial. Here, that approach would risk the jury hearing inadmissible statements, even if they were later objected to and stricken.

Witnesses, in particular Mr. Germain, should not be allowed to speculate or offer opinions about Mr. Henline's mental health or state of mind, nor should Mr. Germain be allowed to testify about his subjective safety concerns about being around Mr. Henline, which is another way of him testifying that it was his feeling or opinion that Mr. Henline had unexpressed violent tendencies.  They can, of course, testify to their direct observations and any specific statements they recall Mr. Henline making, assuming those observations are otherwise relevant, but their testimony should be so limited.

**E. Motion to Exclude Testimony Regarding Deputy Holt's Delivery of Trespass Notice to Mr. Henline on April 6, 2022.**

According to discovery provided by the government, Deputy Holt of the San Juan County Sheriff's Office served Mr. Henline with a trespass notice on the afternoon of April 6th, 2023, while Mr. Henline was parked in his van at a Washington State Ferry lot.  The trespass notice came out of an interaction Deputy Holt had earlier that day with Laura Concord, who made a "cold trespassing" call from a building owned and operated by the Presbyterian Church for meetings.  According to Ms. Concord, a fellow AA member reported that Mr. Henline had been there earlier and may have stayed there overnight.  She reported being "unsure" of how to respond but accepted Deputy Holt's offer to serve Mr. Henline with a trespass notice.

Defendant's Trial Brief and Motions in Limine
(*U.S. v. Henline*; 22-69 JHC)

The Law Office of David Hammerstad, LLC
1000 2nd Ave., Suite 3140
Seattle, WA 98104
Tel. 206.445.0215
e-mail: david@hammerstadlaw.com

While Deputy Holt may recount his subsequent interaction with Mr. Henline at the ferry lot to the extent that it is otherwise relevant, any testimony about his issuance of a trespass order should be excluded under ER 403 as being more prejudicial than probative or as impermissible hearsay.  The building from which Mr. Henline was trespassed was open to the public, and in particular to attendees of AA meetings, including Mr. Henline.  Testimony regarding the order would imply that Mr. Henline did something untoward to deserve it, and the only evidence of such is vague and based on the hearsay of unnamed parties.

**F. Motion to Exclude the Fact of Mr. Henline's Loss of Housing**

The government intends to include evidence that Mr. Henline was either evicted or left his apartment shortly before April 6th. This is not relevant to any element of the charged offense. Its only relevance could be to Mr. Henline's reasons for leaving the island, which are not connected to arson in any way. Moreover, the evidence would lead the jury to speculate that Mr. Henline was homeless and risk prejudice against unhoused people.

**G. Motion to Exclude Testimony About Mr. Henline Losing His Job**

The government intends to elicit testimony that Mr. Henline was fired or quit under pressure from his job on or before April 6th. This is irrelevant and misleading and should not be permitted, nor should any testimony be allowed that alleges Mr. Henline was a poor worker.

Mr. Henline was employed by Ade Kurniade doing pressure washing and window cleaning. The work was intermittent. Mr. Kurniade claims that Mr. Henline was careless, often late, and that he failed to learn or improve. None of these allegations should be admitted. They function simply to paint a poor picture of Mr. Henline's character or intelligence in the eyes of the jury and have nothing to do with the allegations.

Mr. Kurniade also says that he terminated Henline on March 29th. But on April 6, Mr. Henline texted him and asked Mr. Kurniade if he still wanted him to work that day, suggesting that the relationship was ongoing. Mr. Henline worked for a couple of hours that day and then

Defendant's Trial Brief and Motions in Limine
(*U.S. v. Henline*; 22-69 JHC)

The Law Office of David Hammerstad, LLC
1000 2nd Ave., Suite 3140
Seattle, WA 98104
Tel. 206.445.0215
e-mail: david@hammerstadlaw.com

quit the job. Mr. Kurniade then drove him downtown. He will testify that Mr. Henline never said anything about a fire or expressed animosity towards the burned businesses.

Mr. Henline's loss of his job, be it by his own volition or not, is irrelevant to the charges before the jury. Instead the evidence would paint him as lazy, disorganized, or lacking intelligence. It is hard to understand it as anything but character evidence. The government may suggest that it is part of a series of unfortunate events that affected Mr. Henline's mental state on April 6th. This is discussed elsewhere, but the theory fails to make this character evidence "of consequence" to a material fact—namely, whether or not Mr. Henline set these fires. The government should rely on the physical and scientific evidence they have, not witnesses' impressions of Mr. Henline's character.

**H. Motion to Exclude or Redact Evidence from Mr. Henline's Mercury Villager Van**

The government will introduce evidence recovered from a van alleged to be owned by Mr. Henline. Specifically, they intend to introduce evidence of several lighters and receipts from Kings Market that tie Mr. Henline to specific purchases there. However, ammunition was also recovered from the van and is depicted in one or more of the photos that the government may use. Possession of the ammunition is an uncharged crime that would depict Mr. Henline as violent in character, and risks prejudicing the jury without evidentiary value. The defense asks the Court to order the government to exclude or redact any pictures or mention of the ammunition.

Another picture depicts a sticker on the dashboard of the van that reads "I'd be unstoppable if it wasn't for law enforcement and physics." This is irrelevant and prejudicial. Mr. Henline's jest about law enforcement and science bears no relevance to an alleged arson of commercial buildings. The only inference the jury might draw from this sticker is an impermissible one—that Henline dislikes law enforcement and therefore has the character of a person who might deliberately burn things. The defense requests that the government be ordered to redact or exclude the sticker.

**Defendant's Trial Brief and Motions in Limine**
(*U.S. v. Henline*; 22-69 JHC)

**The Law Office of David Hammerstad, LLC**
**1000 2nd Ave., Suite 3140**
**Seattle, WA 98104**
**Tel. 206.445.0215**
**e-mail: david@hammerstadlaw.com**

The government has agreed that it will not introduce other items, such as an aluminum bat and prescription medication, into evidence.

## I. Motion to Limit Discussion of Evidence Alleged to be Mr. Henline's Found in an Abandoned Car

The government intends to introduce evidence that Mr. Henline purchased a number of items on April 6, including bleach, ammonia, paraffin oil, lighter fluid, and energy drinks. A bottle of bleach and ammonia were found, along with a bottle of paraffin oil, in an abandoned car *some two months after the fire*. An energy drink can containing a mixture of Styrofoam and an unknown liquid was found next to the car, outside of it. Two witnesses will say that they saw Mr. Henline in the area of this car around the date of the fire. A deputy was alerted to the evidence by an unhoused man sleeping in the area, who said that he might have touched the Rockstar energy drink can.

There is no evidence that bleach or ammonia were used in the commission of the arson, and neither is highly flammable (bleach is not flammable, ammonia only slightly so). Although, mixed together they can form a toxic gas. However, the government has provided no Rule 16 notice of anticipated expert testimony as to this fact and no evidence suggests that any mixture was involved in the alleged arson. The government should not be allowed to elicit evidence that mixing bleach and ammonia produces a noxious gas. There is no evidence of any connection between bleach, ammonia, or any combined toxic gas and the fire, and any evidence regarding their combination would be irrelevant and prejudicial.

The government also alleges that Henline purchased paraffin oil and combined it or a different heavy alkane product with a Styrofoam-like substance. Witnesses will indicate that this mixture is one that can produce a substance that could be ignitable and would function as a type of "homemade napalm."

But the liquid in the can was tested by the ATF Forensic Science Labs and was not found to be ignitable. (Bates at 4725) Moreover, no residue from any heavy alkane product, including

**The Law Office of David Hammerstad, LLC**
**1000 2nd Ave., Suite 3140**
**Seattle, WA 98104**
**Tel. 206.445.0215**
**e-mail: david@hammerstadlaw.com**

paraffin, was found at the scene of the fire. Nor was any Styrofoam-like substance. The government's expert will not opine that the substance in the Rockstar energy drink can was used in the commission of the alleged arson. Items in the car were tested for Mr. Henline's DNA and fingerprints without a match.

The link between this evidence and the arson, then, is tenuous. At best, the government could argue that this evidence suggests that Dwight Henline unsuccessfully attempted to make an explosive liquid. But that assumes that Mr. Henline can be connected to the car, that the energy drink can found outside of the car is connected to the items in the car, that the car was not accessed by someone else in the two months after the fire, and that Mr. Henline somehow manufactured a liquid that *was* flammable mere hours after purchasing the bleach and ammonia and then failing to make a flammable liquid. Without evidence of a flammable liquid in the car or evidence of any flammable liquids from the soil and other samples taken at the scene, this evidence is too remote from the crime to have much probative value.

Its prejudicial effect, however, is enormous. A jury that believed that Mr. Henline could be connected to these materials might very well believe him to be the kind of person who starts fires, despite the lack of relevance of the evidence.

Additionally, witnesses should be precluded from using the unscientific term "homemade napalm." The term evokes war and terrorism and would prejudice Mr. Henline without evidentiary value.

## J. Motion to Limit Victim Impact Evidence

The government has listed over 50 witnesses for trial. Many of them will testify about the damage that the fire caused to them and the town of Friday Harbor. The owners of the affected businesses are of course allowed to testify to the fact of and describe the damage caused, which is an element of the offense.  However, testimony regarding the emotional and psychological impacts of that damage are not relevant to the offense charged.  Instead, this testimony would merely serve to garner sympathy from the jury. In *United States v. Copple*, the court found that it

**Defendant's Trial Brief and Motions in Limine**
(*U.S. v. Henline*; 22-69 JHC)

The Law Office of David Hammerstad, LLC
1000 2ⁿᵈ Ave., Suite 3140
Seattle, WA 98104
Tel. 206.445.0215
e-mail: david@hammerstadlaw.com

was error to allow multiple witnesses to testify about the amount of their losses and the effect

this had on their lives. Although some of that testimony was relevant to intent, its effect was

unnecessarily prejudicial: "In short, we believe that the probative value of the victim impact

testimony was outweighed by unfair prejudice, and that such testimony should have been

excluded under Federal Rule of Evidence 403." *United States v. Copple*, 24 F.3d 535, 546 (3rd

Cir. 1994) (error was found to be harmless).

To the extent that owners of the commercial businesses affected did not profit financially

from the fire because of insurance, that can be said without describing the amount of the loss or

its emotional impact.

The government has agreed not to elicit testimony regarding the dollar amount of the

losses caused.

**K. Motion to Allow the Defense to Present Alternate Suspects**

There is some indication that other individuals may have been responsible for the fire, or

at least that law enforcement focused on Mr. Henline so quickly as a suspect that it did not fully

explore other potential culprits. The defense should be allowed to inquire of the government and

other witnesses about these alternate suspects as part of its theory of the case. This evidence

would be admissible simply as establishing reasonable doubt and to show the deficiencies in the

law enforcement investigation.

In *United States v. Armstrong*, 621 F.2d 951 (9th Cir. 1980) and its progeny, courts have

focused on the issue of alternate suspect evidence. The Armstrong cases have generally held that

"fundamental standards of relevancy …require the admission of testimony which tends to prove

that a person other than the defendant committed the crime that is charged." *United States v.

Vallejo*, No. 99-50762, 2001 U.S. App. LEXIS 7367, at *36-37 (9th Cir. Jan. 16, 2001), citing

*United States v. Crosby*, 75 F.3d 1343, 1347 (9th Cir. 1996); *United States v. Stever*, 603 F.3d

747, 756 (9th Cir. 2010). Both the *Crosby* and *Urias Espinoza* Courts pointed to the words of

John Henry Wigmore: "If the evidence [that someone else committed the crime] is in truth

**Defendant's Trial Brief and Motions in Limine**
(*U.S. v. Henline*; 22-69 JHC)

The Law Office of David Hammerstad, LLC
1000 2nd Ave., Suite 3140
Seattle, WA 98104
Tel. 206.445.0215
e-mail: david@hammerstadlaw.com

calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt." *Crosby*, 75 F.3d at 1349, quoting 1A John Henry Wigmore, Evidence in Trials at Common Law § 139 (Tillers rev. 1983); *Urias Espinoza*, 880 F.3d at 517; *United States v. Vallejo*, No. 99-50762, 2001 U.S. App. LEXIS 7367, at *37-38 (9th Cir. Jan. 16, 2001).

The *Armstrong* cases make explicit that even when the defense theory is "purely speculative" the evidence can still be relevant. *Vallejo*, 2001 U.S. App. LEXIS 7367, at *37-38; *Urias Espinoza*, 880 F.3d at 517 ("That the defense's theory may be speculative is not a valid reason to exclude evidence of third-party culpability."). *Armstrong* also made clear that "there is no requirement of 'substantial evidence' linking the third-party with the actual commission of the offense." *Urias Espinoza*, 880 F.3d at 513 (9th Cir. 2018). These cases recognize that it is ultimately the role of the jury to evaluate the evidence. *Id*.

Independently, evidence of alternate suspects should also be admissible to show the deficiencies of the law enforcement investigation.

**L. Motion to Preclude Testimony About Cell Phone Location Analysis**

In its initial Rule 16 letter dated June 10, 2022, the government wrote that it "anticipates calling expert witnesses to address, at least, the origin and cause of the fire, digital device extractions, and DNA and fingerprint analysis," and promised additional disclosures if additional experts were to be called.

On July 14, 2023, the agreed-upon date for government expert disclosures, the government disclosed additional expert materials, and added "[w]hile we will have digital forensic examination testimony at trial related to Henline's phones and accounts, these agents are fact witnesses and do not warrant Rule 16 disclosure letters.  Please advise if you have a differing opinion and we can discuss further."

On August 17, 2023, the defense received in discovery a Powerpoint presentation entitled "FBI Cast Report re: phone # 2519" which appeared to be meant to accompany testimony

**Defendant's Trial Brief and Motions in Limine**
(*U.S. v. Henline*; 22-69 JHC)

**The Law Office of David Hammerstad, LLC**
1000 2nd Ave., Suite 3140
Seattle, WA 98104
Tel. 206.445.0215
e-mail: david@hammerstadlaw.com

regarding the location of Mr. Henline's phone based upon cell tower triangulation (report attached as exhibit). A draft version of this report had been included in an earlier batch of discovery in October 2022.

On September 25, 2023, after catching up on discovery disclosures and reviewing the Powerpoint, defense counsel inquired via email whether the government planned to call an FBI witness to testify to the contents of the Powerpoint, to which the government responded that they would be calling FBI agent Sean Kennedy, and referred to their earlier July 14, 2023, email: "we referenced this type of evidence in our email regarding expert disclosures, a copy of which is attached."

The defense respectfully submits that the government's July 14th email was insufficient as an expert disclosure in this case and Mr. Kennedy's expert opinion testimony should be excluded. By the terms of its July 14th email, a reasonable reader would assume that the government was only planning to call agents to admit the contents of Mr. Henline's phone and accounts.  The defense does not dispute that these types of witnesses would not necessitate Rule 16 disclosures, insofar as they would not be offering opinion testimony.  Indeed, the government's designation of these agents as "fact witnesses" per se suggests they were not intending to offer their expert testimony.

Testimony regarding cell-tower location, however, is expert testimony.  The Second Cicuit joined the Seventh and Tenth Circuits in "holding that testimony on how cell phone towers operate must be offered by an expert witness" and is subject to Rule 16 disclosure. *United States v. Natal*, 849 F.3d 530 (2nd Cir. 2017). The *Natal* court quoted *United States v. Reynolds*, 626 Fed.Appx, 610, 614 (6th Cir. 2015): "The agent's testimony concerning how cell phone towers operate constituted expert testimony because it involved specialized knowledge not readily accessible to any ordinary person.  *Reynolds*, 626 Fed.Appx at 614.  Given the late date, the lack of a Rule 16 disclosure, and the number of other matters commanding the defense's attention, the defense is prejudiced by this late (non-)disclosure and the testimony of Mr. Kennedy should be excluded.

Defendant's Trial Brief and Motions in Limine
(*U.S. v. Henline*; 22-69 JHC)

The Law Office of David Hammerstad, LLC
1000 2nd Ave., Suite 3140
Seattle, WA 98104
Tel. 206.445.0215
e-mail: david@hammerstadlaw.com

**M. Motions and Objections Reserved**

The defense reserves the right to make future motions in limine as appropriate, particularly with respect to any exhibits related to Mr Henline's alleged usage of Facebook, cellphone analysis or traffic, or other electronic media, once those exhibits are disclosed to the defense.

**M. Mr. Henline's Statements**

The government's trial brief indicates that it intends to introduce statements of the defendant and statements of other individuals in text messages. It argues that the hearsay rules would not prevent the introduction of such statements and that the defense would be barred from eliciting exculpatory statements made by Mr. Henline in these conversations. *See* Dkt. 61, *Government's Trial Brief* at 12 and 13.

Any argument about the admissibility of these statements would be based on an individualized analysis of an appropriate hearsay exception, the context of the alleged statement, and relevant case law. As such, the defense reserves objection to particular statements sought to be admitted.

In particular, the defense reserves objection to the admission of statements made by Mr. Henline to Special Agent Salcepuedes during his transport after his arrest.  The government seeks to admit portions of paragraph 4, 9, 10, 11, and 12 of Agent Salcepuedes report.  See dkt 61 at 12 (Salcepuedes ROI attached). The defense maintains that the vast majority of this content is inadmissible under ER 402/403

**N. Exclusion of Witnesses**

The defense agrees that witnesses ought to be excluded from the courtroom.

The government has also indicated in conferences with defense counsel that it may have Special Agent Heller testify more than once in their case-in-chief. This should not be permitted.

**Defendant's Trial Brief and Motions in Limine**
(*U.S. v. Henline*; 22-69 JHC)

The Law Office of David Hammerstad, LLC
1000 2nd Ave., Suite 3140
Seattle, WA 98104
Tel. 206.445.0215
e-mail: david@hammerstadlaw.com

It would make cross-examination more difficult, confuse the jury, and confer an additional unfair advantage to the government.

The government also requests that Fire Investigator McCormick and Fire Research Engineer Grove be allowed to observe the testimony of defense expert Dale Mann. No reason was given why the Court should permit this, and it should not. If the Court does allow this exception to Rule 615, Mr. Henline requests that defense expert Dale Mann be allowed to watch the testimony of the government's experts as well.

### IV. Conclusion

For the reasons stated above, Mr. Henline respectfully requests that his motions in limine be granted.

DATED this 20th day of October, 2023.

/s/ David Hammerstad

David Hammerstad #34255
Attorney at Law
Law Office of David Hammerstad, LLC
1000 2nd Ave, Suite 3140
Seattle, WA 98104
(206) 445-0215

Defendant's Trial Brief and Motions in Limine
(*U.S. v. Henline*; 22-69 JHC)

The Law Office of David Hammerstad, LLC
1000 2nd Ave., Suite 3140
Seattle, WA 98104
Tel. 206.445.0215
e-mail: david@hammerstadlaw.com

CERTIFICATE OF SERVICE

I, David Hammerstad, hereby certify that on October 20, 2023, I electronically filed the foregoing Trial Brief and Motions in Limine with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the Government.

/s/ David Hammerstad

David Hammerstad #34255
Attorney at Law
Law Offices of David Hammerstad
1000 2nd Ave Suite 3140
Seattle, WA 98104
(206) 445-0215
david@hammerstadlaw.com

**Defendant's Trial Brief and Motions in Limine**
(***U.S. v. Henline***; 22-69 JHC)

The Law Office of David Hammerstad, LLC
1000 2nd Ave., Suite 3140
Seattle, WA 98104
Tel. 206.445.0215
e-mail: david@hammerstadlaw.com